1    DENNIS J. HERRERA, State Bar #139669
     City Attorney
2    CHERYL ADAMS, State Bar #164194
     Chief Trial Deputy
3    WARREN METLITZKY, State Bar #220758
     Deputy City Attorney
4    Fox Plaza
     1390 Market Street, Sixth Floor
5    San Francisco, California 94102-5408
     Telephone:     (415) 554-3916
6    Facsimile:     (415) 554-3837
     E-Mail:        warren.metlitzky@sfgov.org

7

8    Attorneys for Defendant
     CITY AND COUNTY OF SAN FRANCISCO

9

10

11                 UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13    PHILLIP PLEVIN, TERESITA TORRES,     Case No. 11-cv-2359 MEJ

14         Plaintiffs,               **DEFENDANTS' NOTICE OF MOTION AND**
                                           **MOTION FOR ATTORNEY FEES AND**
15         vs.                       **EXPERT FEES**

16    CITY AND COUNTY OF SAN          Date:               January 31, 2013
     FRANCISCO; S. A. NAVARRO and Does 1-    Time:              10:00 a.m.
17    25, inclusive                        Place:            Courtroom B, 15th Floor
                                       Judge:          Hon. Maria-Elena James
18         Defendants.

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION AND MOTION ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.     INTRODUCTION ......................................................................................... 2

II.    FACTUAL BACKGROUND ....................................................................... 2

    A.    Hit And Run Incident .............................................................. 3

    B.    Plaintiffs Did No Pre-Litigation Investigation Before Filing Their Complaint .......................................................................... 3

III.    PROCEDURAL HISTORY ......................................................................... 3

    A.    Defendants File An Anti-SLAPP Motion and Motion To Dismiss ............. 3

    B.    Court Grants Defendants' Motion To Dismiss And Gives Leave To Seek Fees For Anti-SLAPP Motion. ........................................... 4

    C.    Plaintiffs File Their First Amended Complaint With The Same Allegations As Their Initial Complaint .......................................... 5

    D.    Plaintiffs Did No Investigation Before Filing Their Amended Complaint .. 5

    E.    Plaintiffs Did Not Seek Discovery From Defendants Until After The Statute Of Limitations Ran. ....................................................... 6

    F.    Plaintiffs' Refused To Dismiss Their Action .................................... 6

    G.    Defendants Again Requested That Plaintiffs Dismiss Their Action Before Causing Additional Expenses, And Offered To Waive More Than $24,000 In Fees ................................................................ 6

    H.    Plevin's Deposition .................................................................. 7

    I.    Torres' Deposition ................................................................... 8

    J.    Ofcrs. Navarro and Magaynes' Depositions. .................................. 8

    K.    *Monell*-related discovery ......................................................... 9

    L.    After Party Depositions, Plaintiff Again Refused To Dismiss Their Case .. 9

    M.    The Court Granted Defendants' Motion For Summary Judgment In Its Entirety .................................................................................. 10

IV.    THE LAWSUIT WAS WITHOUT FOUNDATION, AND A FEE AWARD AGAINST PLAINTIFF IS WARRANTED UNDER SECTION 1988. ............. 11

    A.    From Inception, Plaintiffs Knew Their Case Lacked Any Factual Basis.. 11

    B.    Each Of Plaintiffs' Cause Of Actions Lacked Foundation From Inception. ................................................................................. 14

        1.    First Amendment Right Of Access To The Courts ...................... 14

        2.    First Amendment Expressive Conduct/Association ...................... 14

| | | | |
|---|---|---|---|
| | 3. | Fourth Amendment | 15 |
| | 4. | Fourteenth Amendment Equal Protection | 16 |
| | 5. | Fourteenth Amendment Procedural and Substantive Due Process | 16 |
| | 6. | *Monell* | 16 |
| V. | | THE COURT SHOULD CONSIDER UNDER SECTION 1927 WHETHER TO ORDER THAT PLAINTIFFS' COUNSEL IS RESPONSIBLE FOR ANY OF THE FEE AWARD. | 17 |
| VI. | | DEFENDANTS' REASONABLE ATTORNEY FEES AND EXPERT FEES. | 19 |
| | A. | Defendants' Lodestar Amount | 19 |
| | 1. | Reasonable Hours, Fees And Expenses For This Action | 19 |
| | 2. | Defendants' Reasonable Rate | 19 |
| | 3. | Total Lodestar & Expert Fees | 19 |
| | B. | Alternatively, The Court Should Award Fees From Any Time After Which Plaintiffs Should Have Dismissed Their Action As Without Foundation. | 20 |
| | C. | Fees By Cause Of Action | 21 |
| | D. | Fees For Specific Motions | 21 |
| | 1. | Defendants' successful anti-SLAPP motion. | 22 |
| | 2. | Defendants' motion for summary judgment. | 22 |
| | 3. | Defendants' administrative request for an extension of time to file their motion for attorneys fees. | 22 |
| | 4. | Defendants' fees for this fee motion. | 22 |
| CONCLUSION | | | 22 |

1

# <u>TABLE OF AUTHORITIES</u>

2
**State Statutes & Codes**
California Code of Civil Procedure
3
   §335.1 .................................................................................................6

4
**Federal Cases**
*Christiansburg Garment Co. v. EEOC*
5
   434 U.S. 412 (1978).........................................................................20

6
*Danielson v. Winnfield Funeral Home of Jefferson, Inc.*
   634 F. Supp. 1110 (E.D. La. 1986) ..............................................18
7

8
*Estate of Blas*
   792 F.2d 858 (9th Cir. 1986) .........................................................17

9
*Galen v. County of Los Angeles*
10
   477 F. 3d 652 (9th Cir. 2007) ...................................................20, 21

11
*Gollomp v. Spitzer*
   568 F.3d 355 (2d Cir. 2009) .....................................................17, 18
12

13
*Harris v. Maricopa Cnty. Superior* Court
   631 F.3d 963 (9th Cir. 2011) .........................................................21

14
*Hughes v. Rowe*
15
   449 U.S. 5 (1980)...........................................................................11

16
*Kapco Manuf. Co. v. C&O Enterprises, Inc.*
   886 F.2d 1485 (7th Cir. 1989) .......................................................17
17

18
*Karam v. City of Burbank*
   352 F.3d 1188 (9th Cir. 2003) .......................................................12

19
*Kerr v. Screen Extras Guild, Inc.*
20
   526 F.2d 69-79 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976) .........................................................19

21
*Legal Services of Northern California, Inc. v. Arnett*
   114 F.3d 135 (9th Cir. 1997) .........................................................11
22

23
*Margolis v. Ryan*
   140 F. 3d 850 (9th Cir. 1998) ........................................................12

24
*McGrath v. County of Nevada*
25
   67 F.3d 248 (9th Cir. 1995) ...........................................................19

26
*Morales v. City of San Rafael*
   96 F. 3d 359 (9th Cir. 1996) ..........................................................19

27
*Munson v. Milwaukee Board of School Directors*
28
   969 F.2d 266 (7th Cir. 1992) .........................................................11

Mtn for Attorney Fees and Expert Costs
Plevin/Torres v. CCSF; No. 11-cv-2359 MEJ
iii
n:\lit\li2011\111109\00816719.doc

*New Alaska Dev. Corp. v. Guetschow*
   869 F.2d 1298 (9th Cir. 1989) ...........................................................................17

*Patton v. County of Kings*
   857 F.2d 1379 (9th Cir. 1988) ...........................................................................14

*Ratliff v. Stewart*
   508 F.3d 225 (5th Cir. 2007) .............................................................................17

*The Jolly Group v. Medline Indus., Inc.*
   435 F.3d 717 (7th Cir. 2006) .............................................................................17

*Trulis v. Barton*
   107 F.3d 685 (9th Cir. 1997) .............................................................................17

*United States v. Ringrose*
   788 F.2d 638 (9th Cir. 1986) .............................................................................11

**Federal Statutes**

28 U.S.C.
   § 1927 ...........................................................................................................1, 17

42 U.S.C.
   § 1988 ...................................................................................................1, 11, 17

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  NOTICE IS HEREBY GIVEN that on January 31, 2013, at 10:00 a.m., in the United States District Court, 450 Golden Gate Avenue, San Francisco, California, 19th Floor, Courtroom 11, Defendants City and County of San Francisco and Officer Shaun Navarro (collectively, "Defendants") will, and hereby do, move the Court for an order:

1.      Awarding Defendants their attorney fees, paralegal and investigator fees, and expert witness fees against Plaintiffs and, should the Court find it appropriate, their counsel William Weiss, in the amount of $207,623.13, with Plaintiffs and Mr. Weiss being jointly and severally liable for that amount.

2.      In the alternative, awarding the Defendants their attorney fees, paralegal and investigator fees, and expert witness fees against Plaintiffs and, should the Court find it appropriate, their counsel William Weiss, for the time period August 12, 2011, to the present, in the amount of $180,067.25, with Plaintiffs and Mr. Weiss being jointly and severally liable for that amount.

3.      In the alternative, awarding the Defendants one of the two amounts listed above against Plaintiffs and ordering that Mr. Weiss pay all or some portion of that amount (with Plaintiffs being responsible for the remainder) based on Mr. Weiss' vexatious and bad-faith conduct during the litigation to increase the time and costs incurred by the Defendants.

4.      Should the Court find it appropriate, an order awarding costs against William Weiss (as claimed against Plaintiffs in the Defendants' cost bill), such that Mr. Weiss is jointly and severally liable with Plaintiffs for the cost bill.[1]

The Defendants make this motion pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and any other applicable provision.  The Defendants further make this motion pursuant to the Court's inherent powers.

---

[1] The Defendants included their expert witness fees in the cost bill and are including the same expert witness fees in this motion.  The Defendants are not seeking double recovery of the expert witness fees, but include them in both the cost bill and the motion simply in an abundance of caution.

1    Defendants base their motion on this notice of motion and motion, the memorandum of points

2    and authorities in support thereof, the declaration of Warren Metlitzky, and the complete case file,

3    including without limitation the filings and orders relating to the Defendants' summary judgment

4    motion and the Defendants' cost bill.

5                          **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **I.      INTRODUCTION**

7          This lawsuit is not only meritless, but plaintiffs knew it was meritless from its inception.  At its

8    heart, this case is about a hit and run accident in which law enforcement officers were unable to locate

9    the hit and run driver.  Rather than pursue that tortfeasor, plaintiffs individually sued the investigating

10   officer, Shaun Navarro, for *punitive* damages.  Plaintiffs' fantastical claims allege that Officer Navarro

11   deliberately destroyed the license plate number of the vehicle that struck them because plaintiff Philip

12   Plevin is a member of the Bay Riders Motorcycle Club, and because the San Francisco Police

13   Department has a policy of discriminating against Bay Riders members.

14         The problem with plaintiffs' fantasy is that they have no facts to support it, and never did.

15   Initially, the Court told plaintiffs they had insufficient facts.  Plaintiffs ignored it.  Defendants

16   repeatedly told plaintiffs that they had no facts on which to base their claims.  Plaintiffs insisted on

17   "taking a chance" and "rolling the dice," and instead took the opportunity to seek information from the

18   San Francisco Police Department about the department's gang unit's investigation into the Bay Riders.

19   Ultimately, the Court granted summary judgment on each cause of action.  And it did so based on facts

20   that were obvious to plaintiffs and their attorney from the inception of this lawsuit.

21         In all, plaintiffs and their attorney forced defendants to incur in excess of $200,000 in

22   attorneys' fees for a case that had no factual foundation from the inception.  Defendants now seek to

23   recover those fees from plaintiff and, should the Court deem it appropriate, from plaintiffs' counsel.

24   **II.     FACTUAL BACKGROUND**

25         Defendants will not go into detail about the facts of this lawsuit, given the extensive summary

26   judgment briefing, with supporting evidence, and the Court's detailed order granting summary

27   judgment.  The City Defendants request that the Court take judicial notice of the summary judgment

28   papers and order, as well as the entire case file.

**A.    Hit And Run Incident.**

As the Court explained in detail in its December 4, 2012 Order (Docket No. 68) (hereinafter "MSJ Order"), plaintiffs Philip Plevin and his wife, Teresita Torres were involved in a hit and run accident on December 18, 2009.  The investigating officer, Shaun Navarro, visited plaintiffs in the hospital, reassured them that he had a potential license and told them that he would do his best to try to identify the hit and run driver.  When his investigation left him unable to identify the person who struck plaintiffs, plaintiffs individually sued him for <u>punitive</u> damages.

**B.    Plaintiffs Did No Pre-Litigation Investigation Before Filing Their Complaint.**

As the Court detailed in its order granting defendants' motion for summary judgment, plaintiffs did virtually no pre-lawsuit investigation prior to filing their complaint to determine if there was a factual basis for their allegations that Officer Navarro destroyed the license plate number to prevent them from bringing a case against the hit and run driver.  *See* MSJ Order (Docket No. 68) at 3. Instead, they simply contacted their lawyer and filed a complaint against Officer Navarro and the SFPD.

**III.    PROCEDURAL HISTORY**

On December 6, 2010, plaintiffs filed their initial complaint, alleging federal and state law causes of action, based on the claims that Officer Navarro discriminated against Plevin because he is a member of the Bay Riders and against Torres because she is a Bay Riders "associate."  *See* Complaint (Docket No. 1).  They also alleged that the City had an unconstitutional policy of harassing members and associates of the Bay Riders.  *Id.* at p. 4.

**A.    Defendants File An Anti-SLAPP Motion and Motion To Dismiss.**

After receipt of plaintiffs' complaint, defense counsel made multiple attempts to contact plaintiffs' counsel to request that plaintiffs dismiss the case, or, alternatively, dismiss at least the state law claims rather than force defendants to bear the cost of litigating this action, including filing an anti-SLAPP motion and motion to dismiss.  See letter  plaintiff dated June 16, 2011, Metlitzky Decl. Ex. A.  Plaintiffs' counsel  failed to respond.  *See id.*

Defendant City and County of San Francisco (the only defendant who had then been served) filed a motion to dismiss and an anti-SLAPP motion directed at plaintiffs' state law causes of action. Docket Nos. 13, 16.

After filing their motions, defendants requested that plaintiffs dismiss their complaint entirely "without further expenditure by the parties."  Metlitzky Decl. Ex. A.  Defendants further noted that they "do not take lightly allegations that the City has a policy of discriminating against any group or that any SFPD officer engaged in unconstitutional discrimination" and reminded plaintiffs that there must be facts supporting their complaint.  Metlitzky Decl. Ex. A. ("Such accusations should not be made unless you have strong evidence to support [them].")   Defendants also warned plaintiffs that

> "[i]n communicating the City's offer to your clients, please make them aware that the City has a practice of collecting costs against individuals when it is successful in litigation, even for relatively small costs bills. the City also has a policy of seeking and collecting attorneys' fees wherever the City is able. . . . . It is important that your clients are aware of the City's practice in deciding whether they wish to proceed with this litigation.

Metlitzky Decl. Ex. A

Plaintiffs responded that they would "go ahead and take a chance" rather than dismiss the matter, "even if it means taking a hit from attorney's fees."  Metlitzky Decl. Ex. B.

**B.**      **Court Grants Defendants' Motion To Dismiss And Gives Leave To Seek Fees For Anti-SLAPP Motion.**

On July 29, 2011, the Court granted defendants' motion to dismiss.  See July 29, 2011 Order (Docket #31) (hereinafter "MTD order").  The Court held that the facts as alleged did not constitute any violation of the First Amendment's guarantee of freedom of association or expression.  *Id.* at 5 (Docket #31).  It ruled that there were not facts to support a claim against the City for First Amendment violation of right to access to courts.  *Id.* at 5-6.  The Court also dismissed any claim under the Fourth Amendment, ruling Plevin could not bring a Fourth Amendment action because there was no seizure of plaintiffs' vest at the hospital and that, in any event, Torres had no possessory interest in the jacket.  *Id.* at 6-7.  The Court also dismissed plaintiffs' equal protection and due process claims on the grounds that the facts did not support such claims.  *Id.* at 8.

As to defendants' anti-SLAPP motion, given that plaintiffs asked to amend their complaint to remove their state law causes of action,  the Court ruled that the anti-SLAPP motion was moot.  *Id.* at

10.  Nevertheless, because plaintiffs conceded their state law causes of action in response to defendants' anti-SLAPP motion, the Court ordered that "the City may move for attorneys' fees under the statute after judgment enters."  *Id.*

### C.    Plaintiffs File Their First Amended Complaint With The Same Allegations As Their Initial Complaint

Despite the Court's dismissal order , on August 18, 2012, plaintiffs filed the First Amended Complaint, which included claims for freedom of association and expression based on the same factual allegations that led the Court to dismiss the original complaint.  First Amendment Complaint ("FAC") (Docket #32) ¶¶17-27.  The FAC also alleged the same Fourteenth Amendment claim (Docket # 32, ¶¶28-33) including a claim by Torres.  It also included the same 14th Amendment claims for violations of the equal protection and due process clauses that the Court already dismissed.  FAC (Docket #32) ¶¶34-44.

### D.    Plaintiffs Did No Investigation Before Filing Their Amended Complaint.

Before filing his First Amended Complaint, Philip Plevin had already <u>voluntarily</u> given up his membership in the Bay Riders.  Torres—the other plaintiff—has never been a member.  Nonetheless, both brought various causes of action alleging that Officer Navarro caused them to forfeit their membership in and association with the Bay Riders.  Further, at the time plaintiffs filed their First Amended Complaint, they knew that the statute of limitations was running on their state law claim. They also knew that they were required to attempt to access the Courts (because the Court's order instructed them on the law), and knew that they had taken no steps to bring a Doe complaint against the hit-and-run driver.  They knew that they had never requested the license plate number from the SFPD or Navarro, either through discovery in this litigation, through a public records act request, or informally.  In short, even after the Court granted defendants' motion to dismiss on the grounds that plaintiffs did not have a factual basis for their claims, plaintiffs did no additional investigation prior to filing the FAC.

E.   **Plaintiffs Did Not Seek Discovery From Defendants Until After The Statute Of Limitations Ran.**

The statute of  limitations for a state court claim ran on December 18, 2011.  Cal. Code Civ. Proc. §335.1.  Plaintiffs did not file a Doe complaint in state court before that date.  JSF (Docket #65) No. 60.  On December 30, 2011, after the statute of limitations had already run, plaintiffs for the first time formally requested documents or information that might contain the potential license number of the hit and run driver.  JSF (Docket #65) No. 62.  Defendants responded on February 7, 2012, and provided the CAD event and unit history, which contain documentation of the searches by Officer Navarro for a potential license plate.  JSF (Docket #65) No. 63.

F.   **Plaintiffs Refused To Dismiss Their Action.**

A settlement conference was held on December 7, 2011 with Magistrate Judge Beeler.  Despite already being on the hook for defendants' fees for the anti-SLAPP motion, plaintiffs refused to dismiss their case.  Metlitzky Decl. ¶13.

G.   **Defendants Again Requested That Plaintiffs Dismiss Their Action Before Causing Additional Expenses, And Offered To Waive More Than $24,000 In Fees.**

By May 2012, the parties had responded to written discovery and the depositions of plaintiffs, defendants and third parties had been noticed.  Metlitzky Decl. ¶¶15-19.  Until June 2012, the vast majority of the expenses of the litigation had been in the initial pleading state with the motion to dismiss and the anti-SLAPP motion.  *See generally* Metlitzky Decl. Ex. K.  With depositions, expert discovery and summary judgment approaching in the next few months, defendants wrote to plaintiffs to attempt to resolve this case.  Metlitzky Decl. Ex. F.  Defendants noted that parties were "about to incur significant expenses to complete discovery," and again requested that plaintiffs dismiss their action.  *Id.*  In exchange for a dismissal of the action, the City offered to waive all of its fees and costs to date, including the more than $24,000 in attorneys' fees to which the City was entitled for successfully litigating its anti-SLAPP motion.  *Id.*  Defense counsel stated that "[w]e trust that you will communicate this offer to your clients and with an explanation of the potential financial consequence they may incur if they decide to proceed with their lawsuit."  *Id.*  Plaintiffs refused to dismiss their action (Metlitzky Decl. ¶18), and in June 2012, the parties began taking depositions.

### H.     Plevin's Deposition

On June 5, 2012, plaintiff Philip Plevin was deposed by defendants.  During his deposition, he refused to identify any members of the Bay Riders (even those with whom he was photographed).  JSF (Docket #65) No. 50.  He professed ignorance as to how the Bay Riders were structured, how they select members, how the club operates, and even as to the most mundane of logistics involving the club.  JSF (Docket #65) No. 45-50; Defs' Sep. Statement (Docket #53) No. 16.  His attorney later characterized his testimony as consistent with the Bay Riders' "code of silence", implying Mr. Weiss was aware that Mr. Plevin deliberately withheld information at his deposition despite his oath to tell the truth.  Metlitzky Decl. Ex. G.

Further, as the Court noted in its Order, Mr. Plevin testified that "he chose to disassociate with the Bay Riders of his own volition.  He explained that he 'just didn't want to be in the club.  I decided to go an do other things with my life.'"  MSJ Order (Docket #68) at 8 (citing Dkt. No., 55-4, Plevin Depo at 197-98).  Plevin also testified that his separation from the club had nothing to do with Officer Navarro.  Plevin Depo. (Docket #55-4) at 198:12-14.  As to his other claims, Plevin admitted that his Fourth Amendment claim was no different than it had been previously, i.e., that Officer Navarro never took his "colors" while Plevin was in the hospital.  JSF  (Docket #65) Nos. 31-43.  He admitted that he did no pre-litigation investigation into what happened to the license plate, did none of his own investigation into the identity of the hit and run driver, and never filed a lawsuit.  JSF (Docket #65) Nos. 54-60.  He even admitted that—despite filing this lawsuit claiming that Navarro failed to provide him with the license plate of the car that struck him—he never expected that Officer Navarro would have given him the plate.  Metlitzky Decl. Ex. G at 177:13-20; 184:21-187:13.  He admitted that he and Ms. Torres had each already been paid $50,000 for the accident, and that he sought additional damages from the police on top of what he had already received.  Metlitzky Decl. Ex. G at 183:14-21. Finally, Plevin conceded that he had no evidence of any SFPD policy or practice of discrimination other than he had been pulled over while wearing his colors on an unspecified numbers of occasions by unspecified officers and never given a ticket.  JSF (Docket #65) Nos. 52-53.  He speculated that these vague events were because he was a member of a motorcycle club, but could not provide any evidence to support his speculation.

In short, Plevin admitted to all of the facts that demonstrated that his case had no merit, and that he had known those facts all along.

## I.      Torres' Deposition.

On June 18, 2012, defendants took Ms. Torres deposition.  She professed the same lack of knowledge about the Bay Riders' organization, rules, membership and activities as did Plevin. Plevin/Torres Depo (Docket #55-5) at 159-162.  She admitted that she had done absolutely no investigation before or after filing this lawsuit (JSF [Docket No. 65] Nos. 58-59), that she was never a member of the Bay Riders (Plevin/Torres Depo [Docket No. 55-5] at 165:25-166:2), that she did not even understand the meaning of the term "associate" (despite alleging that she was discriminated against as an associate of the Bay Riders) (JSF No. 48), that she was not wearing any Bay Riders clothing or indicia at the time of the incident, (Metlitzky Decl. Ex. H  at 95:15-19), that she had no actual evidence of any *Monell* violation other than speculation from Plevin (Plevin/Torres Depo. [Docket #55-5] at 162:13-165:24), and that she could still participate in Bay Riders events and associate with Bay Riders.  Plevin/Torres Depo (Docket #55-5) at 166:6-11.  In fact, the only basis she had for the speculation that Officer Navarro deliberately "threw away" the license plate number was that Philip Plevin had been wearing his colors at the accident scene.  Plevin/Torres Depo (Docket #55-5) at 157:6-13.

Similar to Plevin, Torres' testimony admitted that since the inception of the suit, she had been aware of all of the facts that demonstrated that plaintiffs' case had no merit.

Even after the "damage" to their case caused by plaintiffs' testimony (MSJ Order [Docket #68] at p. 8 n.1), plaintiffs did not dismiss their case.

## J.      Ofcrs. Navarro and Magaynes' Depositions.

On August 1, 2012, plaintiffs took the depositions of Officer Navarro and his partner Officer Christine Magayanes.  The Court specifically noted this date in its MSJ order as part of its finding that plaintiffs "did not do anything to attempt to file such a claim [against the truck driver]" and that plaintiffs did not even begin to develop their case until after the statute of limitations on their underlying claim ran.  MSJ Order (Docket #68) at 7 & n.5.

**K.**     *Monell*-**Related Discovery.**

Both Plevin and Torres—and their attorney William Weiss, who markets himself as a "friend" of the Bay Riders MC[2]— attempted to use this litigation as a vehicle to pry into whether the SFPD had an ongoing investigation into the Bay Riders.  Through their attorney, Plevin and Torres requested all criminal background searches performed by the SFPD into the Bay Riders, information about all surveillance of the Bay Riders, and all documents related to the Bay Riders.  See, e.g. Metlitzky Decl. Ex. D&E.  They deposed SFPD Inspector Daniel Silver, who was identified in the newspaper as being "the gang task force cop who monitors the [Bay Riders] with an FBI partner" and who was reported as having said that "the [Bay] Riders are the biggest [Hells] Angels support club that sprang up a year ago in response to the murder of Mark 'Papa Guardado.'"  Metlitzky Decl. Ex. M.  During Inspector Silver's deposition, Mr. Weiss attempted to determine the level of training of the SFPD Gang Task Force ("GTF") officers assigned to the Bay Riders, the number of officers assigned to the Bay Riders, the duties of those officers, Insp. Silver's familiarity and expertise with motorcycle gang insignia, structure and vocabulary, and other questions that sought to gather information about how the SFPD GTF staffs its Bay Riders investigation, the credentials of those officers and exactly what they know about the Bay Riders.  Inspector Silver's deposition drew 33 instructions not to answer from defense counsel, Metlitzky Decl. Ex. L, at 4:16-7:19  followed by multiple meet and confer letters about his testimony.  Metlitzky Decl. Ex. N.

**L.**     **After Party Depositions, Plaintiffs Again Refused To Dismiss Their Case.**

After the completion of plaintiffs' and defendant's depositions (as well as the depositions of Officer Magaynes and Inspector Silver), defendants had a telephone conversation with Mr. Weiss about plaintiffs' case and followed up with a letter.  Metlitzky Decl. Ex. I.  Defendants noted that with critical depositions now complete, "it is clear that plaintiffs' case has no merit."  Metlitzky Decl. I at 1. Defendants ask[ed] that plaintiffs cease forcing the City to expend time and money taking discovery

---

[2] Mr. Weiss's website (www.wildbill-law.com) reads:  "The Bay Riders are an up and coming club here in San Francisco with about 55 members.  You can see them all over town.  Since Wild Bill is a friend of theirs among many other clubs, they asked me to do a photo shoot of a couple of their members doing stunts on Harleys.  As you can see these guys take their chances.  So does Wild Bill." *Wild Bill's photo shoot with the Bay Riders of San Francisco March 29, 2009, at* http://www.wildbill-law.com/bay_riders_photo_gallery.html.

and retaining experts, and that plaintiffs dismiss all of their causes of action." Metlitzky Decl. Ex. I at 1. In both a telephone conversation with plaintiffs' counsel and a follow-up letter, defendants delineated why plaintiffs had no factual and/or legal basis for each cause of action. Metlitzky Decl. Ex. I. Defendants concluded by requesting that plaintiffs "[p]lease confirm whether you will dismiss all (or any) of plaintiffs' causes of action before the City and Officer Navarro are forced to expend additional resources on further depositions and preparing for a summary judgment motion to defeat plaintiffs' baseless and legally deficient claims." Metlitzky Decl. Ex. I at 2. Defendants warned plaintiffs that "[i]f you fail to voluntarily dismiss this action or any of the causes of action, defendants will seek to recover their attorneys fees, expert costs and other expenses in addition to the statutory costs to which they will be entitled and the fees defendants are owed for bringing a successful anti-SLAPP motion." Metlitzky Decl. Ex. I at 2-3.

Plaintiffs refused to dismiss any of their causes of action. In fact, during defense counsel's conversation with Mr. Weiss, Mr. Weiss stated that plaintiffs may as well "take their chances" with the motion rather than dismiss their case and pay the fees for defendants' anti-SLAPP motion. Metlitzky Decl. ¶23.

**M.    The Court Granted Defendants' Motion For Summary Judgment In Its Entirety.**

On October 4, 2012, defendants filed their motion for summary judgment. Docket Nos. 52-58. On December 4, 2012, the Court granted defendants' motion for summary judgment on all grounds. Docket No. 68. Notably, the Court's basis for granting summary judgment for each cause of action was identified in defendants' August 10 letter to plaintiff in which defendants requested that plaintiffs dismiss their action rather than force defendants to bring a summary judgment motion. *Compare* MSJ Order (Docket # 68) *with* Metlitzky Decl. Ex. I.

On December 13, 2012 defendants and plaintiffs met and conferred about defendants' upcoming motion for attorneys' fees. Metlitzky Decl. ¶ 31. The parties were unable to reach any agreements or stipulations about defendants' request for fees. Metlitzky Decl. ¶ 31.

On December 17, 2012, after plaintiffs reneged on their agreement to extend the time for defendants to file their motion for attorneys' fees, the Court granted defendants' application for

1  extension of time to file their motion, and indicated that defendants could move for fees for the

2  administrative motion.  Docket  No. 72.

3  **IV.   THE LAWSUIT WAS WITHOUT FOUNDATION, AND A FEE AWARD AGAINST PLAINTIFF IS WARRANTED UNDER SECTION 1988.**

4  **A.   From Inception, Plaintiffs Knew Their Case Lacked Any Factual Basis.**

5  Under Section 1983, defendants may recover their fees where "the plaintiff's action was

6  frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."

7  *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (citation and quotations omitted).  "The plaintiff's action must

8  be meritless in the sense that it is groundless or without foundation."  *Id.*  In addition, raising frivolous

9  state-law supplemental claims provides a basis to award a defendant its fees.  *See Munson v.*

10  *Milwaukee Board of School Directors*, 969 F.2d 266, 270-71 (7th Cir. 1992).

11  Although section 1988 fees may not be appropriate where a party "was launching a good faith

12  effort to advance a novel theory under our §1983 jurisprudence" and where the party's claims "were

13  not wholly without merit,"  *Legal Services of Northern California, Inc. v. Arnett*, 114 F.3d 135, 141

14  (9th Cir. 1997); *United States v. Ringrose*, 788 F.2d 638, 647-48 (9th Cir. 1986), a claim that truly has

15  no basis and no support in the law triggers a fee award.

16  Here, from the outset of this litigation, it was obvious that plaintiffs had no foundation for any

17  of their claims.  Yet plaintiffs continued to pursue this litigation despite being told by the Court that

18  their claims lacked merit and despite defendants' repeated requests throughout this litigation to dismiss

19  the case.  Plaintiffs explained that they would rather "roll the dice."  Such cavalier treatment of the

20  Court's resources and of the expenses incurred by the City in defending this matter require that

21  plaintiffs compensate defendants for those fees.  An award of attorneys' fees for the entire length of

22  this litigation is justified on the following grounds.

23  *First*, as demonstrated by their deposition testimony, plaintiffs always had in their possession

24  the facts that affirmatively demonstrate that their case lacked any foundation.  Those facts include the

25  facts identified by the Court in granting defendants' motion to dismiss and/or for summary judgment:

26  Plaintiffs' abject refusal to even attempt to access the courts, plaintiffs' voluntary dissociation with the

27  Bay Riders, the lack of evidence of a seizure of plaintiff's "colors" by Officer Navarro, and plaintiffs'

28  lack of evidence of any unconstitutional policy toward the Bay Riders.  This action was never one in

which plaintiffs had some preliminary facts from which they could reasonably "theorize" that they had

a viable complaint, and where they needed additional discovery or depositions to obtain additional

information.  *C.f., Karam v. City of Burbank*, 352 F.3d 1188, 1196 (9th Cir. 2003) (though "evidence to

support [plaintiffs'] theory failed to materialize, and summary judgment was properly granted in favor

of the defendants, "  Court conclude that it was a close question but that action was not "groundless,

without foundation or frivolous" because plaintiff had sufficient facts to believe a constitutional

violation occurred prior to filing suit).  Here, from inception plaintiffs knew the very facts that caused

the Court to enter judgment against them.

*Second*, a fees award is appropriate here because plaintiffs utterly and deliberately failed to

investigate the facts prior to filing this action.  "[H]ad [plaintiffs] made a reasonable inquiry into the

applicable facts and law before filing their case they would have discovered the insufficiency of their

civil rights claim."  *Margolis v. Ryan*, 140 F. 3d 850, 854 (9th Cir. 1998) (awarding fees under Section

1988 for frivolous civil rights action).  The parties' summary judgment pleadings and the Court's

order granting summary judgment detail plaintiffs' abject failure to determine if they had a factual

basis for any of their claims.[3]  Had plaintiffs done even a modicum of investigation (or even analyzed

the facts they had in their possession), they would have readily discovered that they had no case.

Moreover, the harm here is not limited just to the hundreds of thousands of wasted public

dollars.  Plaintiffs' failure to investigate their claim before filing suit deliberately and unjustifiably

placed at issue the personal finances of a sworn law enforcement officer.  Plaintiffs' suit against

Officer Navarro seeks <u>punitive</u> damages against him.  To be sure, police officers accept that in the

exercise of their duties there is a likelihood that a civil rights lawsuit will be filed against them.  But it

---

[3] Astonishly, Plevin and Torres did not even take the most basic of steps that a reasonable person would before filing a federal civil rights lawsuit:  calling the station or even Officer Navarro for an explanation.  Instead, they just contacted a lawyer in order to sue the police department.  There are innumerable steps—none of which are that detailed or involved—that plaintiffs could have taken before leaping to the completely unfounded conclusion that Officer Navarro must have deliberately destroyed the only evidence that would allow them to bring a civil suit, and that he did so because Plevin is a member of the Bay Riders.  Plaintiffs are free to harbor such fantastical conspiracy theories against law enforcement officers.  But they are not entitled to sue a police officer for punitive damages based solely on their imagination.

1  is a wholly different thing where an officer's personal finances are put on the line by plaintiffs who

2  treat the legal process as cavalierly as Plevin and Torres did here.

3      *Third*, plaintiffs' lack of evidence, not a lack of clarity in the law, made their suit unreasonable

4  from the inception.  The case law upon which the Court based its orders granting the motion to dismiss

5  and summary judgment was well-established before this case was filed.  There is nothing novel about

6  the notion that a Fourth Amendment seizure requires a seizure, that there is no First Amendment claim

7  where plaintiffs' First Amendment rights have not been chilled, that a denial of right to court access

8  claims requires that plaintiffs attempt to exercise of their right to access the court, that a *Monell* claim

9  requires some factual evidence of an unconstitutional policy, or that an equal protection claim requires

10  evidence of similarly situated persons treated differently or of unconstitutional harassment.  Here,

11  plaintiffs were not arguing for a novel theory of law or to extend existing case law.  Rather, the

12  contours of the case law are largely clear.  What plaintiff lacked—and knew they lacked—were any

13  facts to support their case.

14      *Fourth*, there is evidence that plaintiffs pursued this case for an improper purpose.  While bad

15  faith is not a requisite element for a Section 1988 fees award, courts may consider motive.  Here,

16  plaintiffs repeatedly described their behavior in gambling terms (i.e., "take a chance", "roll the dice").

17  Apparently, they believed that the chance of success or of coercing a settlement was much greater than

18  the likelihood the Court would award fees against them.  They even said as much on more than one

19  occasion.  Metlitzky Decl. ¶23 & Exs. B, C.  There is also evidence that plaintiffs used this lawsuit as

20  a vehicle to attempt to gain information about any ongoing investigation  by the SFPD into the Bay

21  Riders.  They sent discovery about the SFPD's surveillance and investigations of the Bay Riders, took

22  the deposition of the Gang Task Force officer assigned to investigate the Bay Riders, and sought

23  information about the GTF's investigation into Bay Riders' members' involvement in an attempted

24  homicide.  At the same time, Plevin and Torres refused to give any information—even under oath—

25  about the Bay Riders.  In their depositions, Plevin and Torres refused to provide any details about the

26  club or even identify the names or even the nicknames other current or former Bay Riders (whom

27  Plevin described as brothers).  An action is "clearly vexatious" or "brought primarily for purposes of

28  harassment" when the plaintiff pursues the litigation with an improper purpose, such as to annoy or

embarrass the defendant.  *E.g., Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988).  There is evidence of such conduct here.

**B.     Each Of Plaintiffs' Cause Of Actions Lacked Foundation From Inception.**

As described above, plaintiffs should never have brought this action because there was no factual or legal foundation for any of plaintiffs' causes of action.  Each cause of action is analyzed in detail below.

**1.     First Amendment Right Of Access To The Courts.**

From the inception of this action, Plaintiffs never had any factual basis to bring a claim that they were denied their right of access to the courts.  As this Court found, "Plaintiffs never *attempted* to exercise their rights under the First Amendment to access the courts and therefore this right could not have been infringed by Defendants."  MSJ Order (Docket #68) at 7 (emphasis added).  Plaintiffs' case rested on their assertion that Officer Navarro prevented them from bringing a claim against the hit-and-run driver.  But plaintiffs never even tried to bring a claim against the driver, never conducted any investigation to determine if they could identify the driver on their own, and *astonishingly* never even asked Officer Navarro or the SFPD if they had a viable license plate.  Moreover, after the action was filed, plaintiffs deliberately shot themselves in the foot by letting the statute of limitations run without ever trying to determine if the SFPD had a potential license plate.  They failed to take even the preliminary step of filing a Doe complaint in state court to preserve their rights by extending the statute of limitations by three additional years.  Finally, despite his insistence that the SFPD engaged in wrongdoing by not including the plate on the police report,  Plevin testified at deposition that he believed that the SFPD never would have given him the plate number in the first place.

**2.     First Amendment Expressive Conduct/Association**

Plaintiffs never had any foundation to bring a First Amendment claim for violation of their rights to expressive conduct/association.  As explained in great detail in defendants' motion for summary judgment, plaintiffs never engaged in any protected expression or association.  But even if they had, it was never chilled by defendants.  Plevin was never prevented from wearing his colors or from being a member of his club.  Plevin later voluntarily "chose to walk away from [his] association with the club" (MSJ Order (Docket #68) at 8) for reasons unrelated to defendants.  As the Court noted

in its Order, there are plenty of colorable—though ultimately unsuccessful—claims that motorcycle

clubs are prevented from speaking or gathering by government entities.  MSJ Order (Docket #68) at 8.

This is a far cry from those cases.  There is no evidence here—and there was none when this lawsuit

was filed—that Plevin was prevented from wearing his colors or participating in his club by Officer

Navarro's acts.

Torres' claim is even more obviously without factual basis.  Torres *never* wore colors, and was

never prevented from doing so.  Nor was she ever prevented from associating with the Bay Riders.  In

fact, despite the fact that her role as an "associate" of the club forms the basis of her First Amendment

claims, she does not even know what that term means.

### 3.     Fourth Amendment

Plaintiffs never had any foundation to bring a claim for violation of their Fourth Amendment

rights.  Their claims stems from Officer Navarro's alleged "seizure" of Plevin's colors in the hospital.

It has been abundantly clear from the inception of this lawsuit that there was no seizure, and that

Torres never even had any possessory interest in the vest.  That is exactly what the Court held when it

dismissed plaintiffs' Fourth Amendment claims for lack of factual support.  Yet plaintiffs—even after

being told that their claims had no factual basis—amended their complaint to include a Fourth

Amendment seizure claim.  The Court again dismissed their claim, ruling that "[p]plaintiffs' base this

claim on essentially the same allegations that were found insufficient by the Court when it granted

Defendants' motion to dismiss."  MSJ Order (Docket #68) at 10 n.7.  The Court also noted that

"[p]laintiffs' opposition to Defendants' motion for summary judgment, which does not even address

the viability of how Torres can assert a claim with respect to Plevin's vest, does nothing to alter the

Court's earlier analysis."  MSJ Order (Docket #68) at 10 n.7.

In short, plaintiffs knew they had no claim, but filed this suit anyway.  Then, after the Court

told plaintiffs their Fourth Amendment claim had no factual support, they reasserted the claim.

Defendants asked plaintiffs to drop the claim, and they refused.  And finally, the Court dismissed the

claim on summary judgment, noting that nothing had changed since plaintiffs first brought the claim.

This is a prime example of a claim "without foundation."

#### 4.     Fourteenth Amendment Equal Protection

Plaintiffs never had any foundation to bring a claim for violation of their Fourteenth Amendment rights.  They claim that Defendants (specifically Navarro) "treat[ed] them differently due to their association with the Bay Riders."  The Court originally dismissed this claim for numerous reasons, including that plaintiffs failed to "plead that they were not treated the same as similarly-situated individuals."  MTD Order (Docket #31) at 7-8.  Nevertheless, plaintiffs re-alleged this claim, and refused to dismiss it after defendants requested that they do so.  The Court granted summary judgment on this claim on the same grounds as it had originally dismissed the claim.  MSJ Order (Docket #68) at 11 ("Plaintiffs, however, do not identify any similarly situated individuals who were treated differently than them.")  Further, the Court found that "Plaintiffs' claim essentially rests on speculative inferences that Defendants acted with discriminatory intent without providing any specific evidence of such discrimination."

#### 5.     Fourteenth Amendment Procedural and Substantive Due Process

The Court initially dismissed plaintiffs' substantive and procedural due process claims, holding that plaintiffs had no property interest in a potential civil case against a hit and run driver.[4]  MTD Order (Docket # 31) at 8.  The Court held that plaintiffs needed a final, reviewable judgment prior to bringing such a claim.  *Id.*  Nonetheless, plaintiffs reasserted this claim in their Amended Complaint and refused to dismiss it.  Despite this refusal, plaintiffs failed to oppose defendants' summary judgment on those causes of action.

#### 6.     *Monell*

As demonstrated above, plaintiffs never had any foundation for any of their constitutional claims, and thus lacked a prerequisite to a *Monell* claim:  an underlying constitutional violation.  But even if they were able to make such a showing, plaintiffs never had any foundation for a Monell claim.  Plaintiffs never had a single shred of evidence of a pattern, practice or policy by the police department of destroying or concealing information (the allegation of misconduct by Navarro).  As for plaintiffs' allegation that the SFPD targeted the Bay Riders for harassment through unlawful detentions and

---

[4] The Court also ruled that any due process "lack of access" claim was subsumed by plaintiffs' First Amendment "lack of access" claim.  MTD Order (Docket #31) at 8.

1  arrests, that alleged practice has no relationship to the purported violation here (concealing or

2  destroying evidence), and even if it did, it rests on pure speculation "without providing any specific

3  evidence of such discrimination."  MSJ Order (Docket #68) at 11.

4      As demonstrated, plaintiffs knew that they had no basis for any of their causes of action, and

5  yet pursued—and then continued to pursue—this litigation through summary judgment.  Because their

6  claims obviously lacked foundation from the inception, a Section 1988 fee award to defendants is

7  appropriate.

8  **V.    THE COURT SHOULD CONSIDER UNDER SECTION 1927 WHETHER TO ORDER
       THAT PLAINTIFFS' COUNSEL IS RESPONSIBLE FOR ANY OF THE FEE
9       AWARD.**

10      The Court may reason that the fees incurred by defendants are a result of the conduct of

11  plaintiffs' counsel as well as plaintiffs.  Consequently, the Court should also consider whether any part

12  of a fee award against Plevin and Torres should be apportioned to their attorney, William Weiss.

13  28 U.S.C. section 1927 authorizes sanctions against an attorney who "multiplies the proceedings in

14  any case unreasonably and vexatiously."  Section 1927 sanctions against an attorney must be

15  supported by "a finding of subjective bad faith."  *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1997).

16  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a

17  meritorious claim for the purpose of harassing an opponent."  *Id.* (quoting *Estate of Blas*, 792 F.2d

18  858, 860 (9th Cir. 1986)).  "[U]nreasonably institut[ing] proceedings," *Ratliff v. Stewart*, 508 F.3d 225,

19  235 (5th Cir. 2007), and "counsel's persistence in asserting specious claims despite ample opportunity

20  to withdraw the claim," *Gollomp v. Spitzer*, 568 F.3d 355, 369 (2d Cir. 2009) (citation and quotations

21  omitted), are grounds for section 1927 sanctions.  Section 1927 imposes a "continuing duty upon

22  attorneys to dismiss claims that are no longer viable."  *The Jolly Group v. Medline Indus., Inc.*, 435

23  F.3d 717, 720 (7th Cir. 2006) (citation and quotations omitted).

24      In addition, "[t]actics undertaken with the intent to increase expenses . . . may also support a

25  finding of bad faith.  Even if an attorney's arguments are meritorious, his conduct may be sanctionable

26  if in bad faith."  *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).  An

27  attorney's "disregard for the orderly process" can support a section 1927 fee award.  *Kapco Manuf. Co.

28  v. C&O Enterprises, Inc.*, 886 F.2d 1485, 1495 (7th Cir. 1989) ("Friedman abandoned professionalism,

1   engaged in conduct deleterious to the judicial system, and evidenced a complete disregard for the

2   district court and its orders."); *see Gollomp*, 568 F.3d at 371-72 (relying in part on counsel's

3   incomprehensible filings and overlength pleadings to support section 1927 fee award).

4           An award of fees can be joint and several against a client and his or her attorney. *See*

5   *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F. Supp. 1110, 1121 (E.D. La. 1986).

6           Under these standards, the Court should consider whether Mr. Weiss' conduct satisfies section

7   1927, and whether a fee award against him is appropriate.  Mr. Weiss pursued a frivolous lawsuit

8   against defendants.  As described above, it was clear from the beginning that there was no foundation

9   to plaintiffs' case for any of the causes of action.  Yet Mr. Weiss—despite being repeatedly asked to

10  dismiss all (or any) claims against defendants—refused to dismiss any of them.  Moreover, the failure

11  to perform an initial investigation may be as much the fault of Mr. Weiss as plaintiffs.  Plevin testified

12  that he did almost no investigation before handing the case to his lawyer.  Mr. Weiss appears to have

13  filed the complaint without any of the required legal or factual investigation.  As a practical matter, it

14  was Mr. Weiss who was in control of who to sue, whether to name the driver as a Doe defendants,

15  and whether to counsel his client about the propriety of suing an individual police officer for punitive

16  damages in a case where plaintiffs had no evidence to support their claims.  There is also evidence that

17  Mr. Weiss may have used this litigation as a means to obtain information for his friends in the Bay

18  Riders.  As noted above, Mr. Weiss tried to obtain information about investigations by the FBI and

19  SFPD Gang Task Force into the Bay Riders MC, about the SFPD resources and personnel assigned to

20  monitor the Bay Riders MC, and about whether and why the SFPD Gang Task Force considers the

21  Bay Riders MC a criminal gang.

22          As a result, the Court should consider whether Mr. Weis should be ordered to pay some or all

23  of the defendants' attorney and expert fees, as the Court deems appropriate, and whether Mr. Weiss

24  should also be held jointly and severally liable with plaintiff on defendants' cost bill, filed separately.

25

26

27

28

## VI.    DEFENDANTS' REASONABLE ATTORNEY FEES AND EXPERT FEES.

### A.    Defendants' Lodestar Amount

#### 1.    Reasonable Hours, Fees And Expenses For This Action

Defendants request $193,685.63in attorneys' fees and $13,937.50 in expert fees for this action. Reasonable attorneys' fees under Section 1988 are calculated using the lodestar method. *E.g., Morales v. City of San Rafael*, 96 F. 3d 359, 363 (9th Cir. 1996). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).  After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation. *Morales v. City of San Rafael*, 96 F. 3d at 363-64; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 69-79 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

#### 2.    Defendants' Reasonable Rate

Defendants are entitled to be compensated for their work at a reasonable rate.  For this motion, defendants request $365 per hour for attorney time, $175 for paralegals and $180 for investigators. Metlitzky Decl. ¶ 43.  These are the Fiscal Year 2013 rates at which the City Attorney's Office bills insurers for work performed by members of the City Attorneys' Office.  Metlitzky Decl. ¶43.

#### 3.    Total Lodestar & Expert Fees

To date, the defendants incurrent in excess of 543.75 attorney hours, 54.5 paralegal hours and 40 investigator hours, which represents $215, 206.25 in fees.  Metlitzky Decl. ¶¶45-50.

Throughout the course of this litigation, defendants researched, drafted and filed a motion to dismiss, an anti-SLAPP motion, an extensive motion for summary judgment (with multiple joint and separate statements of undisputed facts), at least four stipulated requests and an emergency administrative motion.  Defendants prepared for and took five depositions, and prepared nine SFPD officers for deposition (some on multiple occasions, as noticed depositions were taken off calendar), and defended three SFPD officer depositions.  The parties exchanged at least eight sets of discovery, and defendants alone wrote 29 letters to plaintiffs' counsel.  Defendants spent significant hours investigating plaintiffs' *Monell* claims and attempting to identify and preserve electronic data.  A more

detailed explanation of the work performed in this case is summarized in the Declaration of Warren Metlitzky, submitted herewith, and memorialized in redacted contemporaneous timesheets.  Metlitzky Decl. Ex. K.

In an exercise of billing judgment, defendants have excluded from their lodestar request any timekeeper who billed less than ten hours to this matter.   Metlitzky Decl. ¶38.  Defendants have also excluded more than 60 hours of legal work by interns, and paralegal and attorney-level work performed by secretarial staff.  Metlitzky Decl. ¶¶39-40.  Defendants have further reduced the requested hours by 10%, as a further exercise of billing judgment.  Metlitzky Decl. ¶41.

**Reduced by 10%, defendants request a total lodestar of $193, 685.63.**  Metlitzky Decl. ¶51. Defendants have also incurred $13,937.50 in expert fees.  Metlitzky Decl. ¶63.

**B.    Alternatively, The Court Should Award Fees From Any Time After Which Plaintiffs Should Have Dismissed Their Action As Without Foundation.**

As discussed above, plaintiffs are responsible for the entirety of these fees.  However, in the alternative, Defendants request that plaintiffs be ordered to reimburse defendants for fees incurred after the Court granted defendants' motion to dismiss and outlined the factual insufficiencies in plaintiffs' claims.  Even if plaintiffs had a basis to file this action in the first instance, the Court's July 29, 2011order should have been sufficient to demonstrate that to plaintiffs that there was no foundation to continue to pursue an action against defendants.  Nonetheless, plaintiffs filed their First Amended Complaint and proceeded with the litigation.

As an alternative, the Court should award all fees and experts costs incurred since the filing of the First Amended Complaint.  "An action becomes frivolous when the result appears obvious or the arguments are wholly without merit."  *Galen v. County of Los Angeles*, 477 F. 3d 652, 666 (9th Cir. 2007) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).  "A defendant can recover if the plaintiff violates this standard at any point during the litigation, not just at its inception." *Id.*  The fees incurred since the filing of the First Amendment Complaint (less 10%) are $166,093.75 plus $13,937.50 in expert fees.  Metlitzky Decl. ¶¶58, 63.

C.    **Fees By Cause Of Action**[5]

An alternative to awarding fees is for the Court to order plaintiffs to pay for the attorney fees incurred by defendants for defending against specific causes of action that are not intertwined with other causes of action.

"Where the plaintiff asserts both frivolous and non-frivolous claims, only fees attributable exclusively to the plaintiff's frivolous claims are recoverable. *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 971-72 (9th Cir. 2011). "[W]here a plaintiff in a § 1983 action alleges multiple interrelated claims based on the same underlying facts, and some of those claims are frivolous and some are not, a court may award defendants attorneys fees with respect to the frivolous claims only when those claims are not 'intertwined.'" *Id.* at 973 n.2. For example, continuing to pursue a Monell action after discovery reveals no evidence to support such a claim is properly subject to fees under Section 1988. *See Galen v. County of Los Angeles*, 477 F.3d 652, 667-68 (9th Cir. 2007)

Here, those fees include:

- $3,650 in fees devoted solely to plaintiffs' First Amendment claim for denial of right to access the Court. Metlitzky Decl. ¶66.
- $7,300 in fees devoted solely to plaintiffs' First Amendment claim for denial of right to expression and association. Metlitzky Decl. ¶68.
- $1,095 in fees devoted solely to plaintiffs' Fourth Amendment claim for unreasonable seizure of plaintiffs' "colors." Metlitzky Decl. ¶67.
- $1,825 in fees devoted solely to plaintiffs' equal protection claim. Metlitzky Decl. ¶69.
- $14,600 in fees devoted solely to plaintiffs' *Monell* claim. Metlitzky Decl. ¶71.

D.    **Fees For Specific Motions**

At a minimum, the Court should order that defendants are entitled to fees for the following pleadings.

---

[5] Defendants were unable to identify any fees devoted solely to plaintiffs' due process claim. Metlitzky Decl. ¶70

**1.      Defendants' successful anti-SLAPP motion.**

Because plaintiffs dismissed their state law claims in response to defendants' anti-SLAPP motion, defendants are prevailing parties and are entitled to $26,097.50 in mandatory attorneys fees. MTD Order (Docket #31) at 10.

**2.      Defendants' motion for summary judgment.**

Defendants incurred in excess of 155 hours (for a total of $56,575) researching, drafting and filing their motion for summary judgment and reply memorandum, accompanying declarations, evidentiary objections, separate and joint statement of undisputed facts and preparing for and attending the hearing on the motion.  Metlitzky Decl. ¶77.  This amount does not include approximately 25 hours of legal research and drafting performed by an intern.  Metlitzky Decl. ¶77.

**3.      Defendants' administrative request for an extension of time to file their motion for attorneys fees.**

Plaintiffs force defendants to incur more than $1,825 in fees when plaintiffs reneged on their agreement to stipulate to allow defendants nine days of additional time to file their motion.  Metlitzky Decl. ¶ 78.  The Court's December 17 order (Docket #72) indicated that "Defendants' fees request may include any fees incurred as a result of this emergency motion."

**4.      Defendants' fees for this fee motion.**

Defendants spent at least $25,832.50 in fees reviewing billing records, researching and drafting this motion and accompanying documents.  Metlitzky Decl. ¶79.

**CONCLUSION**

Defendants respectfully request that the Court grant this motion.

Dated:  December 24, 2008

                              DENNIS J. HERRERA
                              City Attorney
                              CHERYL ADAMS
                              Chief Trial Deputy
                              WARREN METLITZKY
                              Deputy City Attorney

                    By:_____*/s/  Warren Metlitzky*_____
                              WARREN METLITZKY
                              Attorneys for Defendant
                              CITY AND COUNTY OF SAN FRANCISCO