UNITED STATES DISTRICT COURT
For the Northern District of California

# UNITED STATES DISTRICT COURT

## Northern District of California

| | |
|---|---|
| PHILLIP PLEVIN and TERESITA TORRES,<br><br>Plaintiffs,<br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, S.A. NAVARRO, and DOES 1 to 25,<br><br>Defendants.<br>_____/ | No. 11-cv-2359 MEJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEY FEES AND EXPERT FEES** (Dkt. No. 75) |

## I. INTRODUCTION

Pending before the Court is Defendants City and County of San Francisco and Officer Shaun Navarro's Motion for Attorney Fees and Expert Fees. Dkt. No. 75. Plaintiffs Phillip Plevin and Teresita Torres have filed an Opposition (Dkt. No 82), and Defendants have filed a Reply (Dkt. No. 83). On May 2, 2013, the Court held a hearing in this matter. After consideration of the parties' arguments and controlling authorities, the Court ORDERS as follows.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2010, Plaintiffs initiated this case by filing a complaint in San Francisco Superior Court, alleging state law causes of action against Defendants for negligence, intentional tort and violation of California's Bane Act (California Civil Code section 52.3), and a federal claim pursuant to 42 U.S.C. § 1983 for violation of their First, Fourth, and Fourteenth Amendment rights under the Constitution. Compl., Ex. A to Notice Of Removal, Dkt. No. 1. Plaintiffs sought both general and punitive damages against Defendants. *Id.* On May 12, 2011, Defendants removed the lawsuit to this Court. *Id.* The facts of the lawsuit, as set forth in the previous summary judgment order, are as follows.

Plaintiffs claims stemmed from a hit and run accident that occurred on December 18, 2009.

On that day, Mr. Plevin was driving his Harley Davidson motorcycle westbound on Geary Boulevard with Ms. Torres as his passenger. Mr. Plevin – who was a member of the Bay Riders Motorcycle Club – was wearing a leather vest with the Bay Riders' insignia on the back. Mr. Plevin attempted to veer his motorcycle into an open lane on his right-hand side when a southbound truck failed to stop at a stop sign and turned directly into the lane that Mr. Plevin was headed. Mr. Plevin did not enter the right-hand lane and instead turned his motorcycle back into his original lane. The truck continued westbound at a faster speed than Mr. Plevin, but he was eventually able to catch up with it. Mr. Plevin pulled up next to the truck driver and made a gesture to him. In response, the truck driver glared at Mr. Plevin and swerved the truck into Mr. Plevin's lane, striking the motorcycle and causing it and Plaintiffs to fall. The truck driver then fled the scene and turned off Geary Boulevard at the next intersection. After Mr. Plevin and bystanders assisted Ms. Torres to the sidewalk, Mr. Plevin remounted his motorcycle and pursued the truck driver. He was unsuccessful in locating the truck and returned to the scene about five minutes later.

Officer Navarro and his partner, Officer Christine Magayanes, were dispatched to the scene of the accident. Navarro was responsible for conducting the investigation and writing the report of the incident. Upon arriving, Ofc. Navarro and Ofc. Magayanes interviewed witnesses. At the summary judgment stage, the parties disputed whether the witnesses provided the Officers with one or two potential license plate numbers for the truck driver.

Although Plaintiffs initially refused medical treatment, they were eventually taken by ambulance to San Francisco General Hospital. Because Ofc. Navarro was unable to interview Plaintiffs at the scene, he traveled to the hospital to interview them. Before doing so, Ofc. Navarro, using his patrol car's mobile computer, performed two searches in the DMV database on the potential license plate number of the truck that he had received.

At the hospital, Ofc. Navarro obtained Mr. Plevin's version of the incident and his contact information. Mr. Plevin asked Ofc. Navarro if the Officers had obtained a license plate number for the truck. According to Mr. Plevin, Ofc. Navarro asked him questions about the Bay Riders, although Mr. Plevin could not recall anything specific about those questions. Ofc. Navarro then

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

interviewed Ms. Torres, who also provided him with an account of the accident and her contact information. Ms. Torres testified that Ofc. Navarro told her not to worry because the Officers had the license plate.

During the interview, Mr. Plevin was holding onto his Bay Riders vest or "colors." Mr. Plevin testified that Ofc. Navarro reached for the vest. Because Bay Riders members do not let non-club members take their "colors," Mr. Plevin refused to hand over his vest. Ofc. Navarro took his hands off the vest and made no further attempt to take it.

After leaving the hospital, Ofc. Navarro ran additional searches of the license plate number, but did not obtain any results. Ofc. Navarro then wrote the official report for the incident. He included the accounts of the three witnesses he and Ofc. Magayanes interviewed, but he did not list any license plate numbers in the report. Ofc. Navarro explained that because the invalid license plate number was preserved in the database and since it did not provide any useful information, he decided not to include the license plate number in his report.

After the accident, Plaintiffs obtained a copy of the incident report and reviewed it. They did not conduct an independent investigation into the identity of the truck driver. They also did not contact Ofc. Navarro to ask about the incident report or whether he had a license plate number for the truck driver. Nor did Plaintiffs contact the San Francisco Police Department to ask whether it had the license plate number. It was not until December 31, 2011 – more than one year after Plaintiffs first initiated this action and nearly one month after the First Amended Complaint was filed – that Plaintiffs requested documents and information from Defendants about a potential license plate number for the truck driver. On February 7, 2012, Defendants provided Plaintiffs the CAD event history of the incident, which contained documentation of Ofc. Navarro's searches with respect to the plate number.

As indicated above, on December 6, 2010, Plaintiffs initiated this lawsuit against the City and County of San Francisco in state court. Plaintiffs never filed an action against the unidentified truck driver, and the statute of limitations for such a claim expired. In their Complaint, Plaintiffs alleged that due to their affiliation with the Bay Riders, Defendants conducted an inadequate investigation of

the accident and destroyed any clues about the truck driver's identity, particularly any potential license plate number. Plaintiffs alleged that this violated their First Amendment rights by denying them access to the courts and chilling their rights to freedom of expression and freedom of expressive association. Plaintiffs also alleged that their Fourth Amendment rights were violated by Ofc. Navarro's attempt to seize Mr. Plevin's vest. Further, Plaintiffs alleged that their Fourteenth Amendment rights were violated because Defendants treated them differently due to the Bay Riders membership.

On June 6, 2011, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and a corresponding anti-SLAPP motion. Dkt. Nos. 13, 16. The Court granted the motion to dismiss with leave to amend, denied the anti-SLAPP motion to strike as moot, and denied without prejudice the City's anti-SLAPP motion for attorneys' fees. Dkt. No. 31. Plaintiffs then filed their First Amended Complaint alleging only violations of their First, Fourth and Fourteenth Amendment rights. FAC, Dkt. No. 32. On October 4, 2012, Defendants filed their Motion for Summary Judgment (Dkt. No. 52).

On November 8, 2012, the Court held a hearing on Defendants' Motion. Thereafter, on December 4, 2012, the Court issued its order granting summary judgment in favor of Defendants as to all of Plaintiffs' claims. Dkt. No. 68.

As to Plaintiffs' First Amendment claim alleging denial of access to the courts, the Court found that Plaintiffs' claim failed because it was undisputed that Plaintiffs never attempted to exercise that right by filing a lawsuit against the truck driver. *Id*. at 5-6. Particularly, the Court noted that Plaintiffs waited until after the statute of limitations on such a claim had expired to begin requesting information about the potential license plate number. *Id*. at 6. As to Plaintiffs' First Amendment expressive conduct claim, the Court found that Plaintiffs failed to present any evidence that their right to expressive conduct was chilled by Defendants. *Id*. at 7-8. Likewise, the Court found that Plaintiffs had not presented any evidence that their right to freely associate with the Bay Riders was chilled by Defendants. *Id*. at 8-9.

With respect to Plaintiffs' Fourth Amendment claim, the Court found that because Ofc.

Navarro only momentarily touched Mr. Plevin's vest and released it when Mr. Plevin objected, it did not amount to a meaningful interference with Mr. Plevin's possessory interest in the vest and thus Plaintiffs could not establish that any Fourth Amendment violation occurred. *Id*. at 9-10.

Finally, as to Plaintiffs' Fourteenth Amendment claim, the Court found that Plaintiffs had failed to identify any similarly situated individuals who were treated differently than they were and had only cited to speculative inferences that Defendants acted with discriminatory intent. *Id*. at 10-11. The Court thus held that Plaintiffs' equal protection claim failed as a matter of law. *Id*. at 11.

Defendants now move to recover attorneys' fees and costs incurred in defending this action.

### III.   DISCUSSION

**A.   Fees in Connection with Plaintiffs' Section 1983 Claim**

   1.   <u>42 U.S.C. § 1988</u>

As detailed above, the Court granted judgment in favor of Defendants on Plaintiffs' § 1983 claim for violation of their First, Fourth, and Fourteenth Amendment rights. Dkt. No. 68. Pursuant to 42 U.S.C. § 1988(b), when a party prevails on a § 1983 claim, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Thus, having prevailed on summary judgment, Defendants may seek a fee award pursuant to § 1988(b).

While § 1988 authorizes the Court to award attorneys' fees, a defendant seeking a fee award faces a high standard before the Court may grant such a request. The Supreme Court has instructed that a prevailing defendant in a § 1983 action is entitled to an attorneys' fees award under § 1988 only when the plaintiff's action is "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). In determining whether this standard has been met, a district court must assess the claim at the time the complaint was filed and must avoid "post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir. 2006) (quoting *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir.1995) (internal quotation marks and citations omitted)); *see Christiansburg*,

434 U.S. at 421-22.

### 2. 28 U.S.C. § 1927

Defendants also request that, should the Court determine that Defendants' fees were incurred as a result of the conduct of Plaintiffs' counsel, William Weiss, it should consider whether any part of the fee award against Plaintiffs should be apportioned to Mr. Weiss. Mot. at 17. Pursuant to 28 U.S.C. § 1927, the Court may impose sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." As a threshold to imposing fees under § 1927, the Court must find that the attorney acted with subjective bad faith. *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1997). Bad faith can be established by showing that an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purposes of harassing an opponent. *Id.*; *Estate of Blas*, 792 F.2d 858, 8690 (9th Cir. 1986).

### 3. Analysis

Defendants assert that a fee award is appropriate in this case because Plaintiffs knew this lawsuit was meritless from its inception. Mot. at 2. They argue that rather than pursuing the driver responsible for Plaintiffs' injuries, Plaintiffs filed factually baseless claims against the City and Ofc. Navarro and misused the lawsuit as an opportunity to seek information from SFPD about its gang unit's investigation into the Bay Riders. *Id.* at 2. Defense counsel contends that despite the Court's ruling dismissing their state law claims and finding that Plaintiffs had failed to assert sufficient facts to support their federal claims, and despite defense counsel's repeated efforts to persuade Plaintiffs to voluntarily dismiss their case, Plaintiffs insisted on "rolling the dice" and proceeding with their lawsuit. *Id.* at 11. As a result, Defendants argue that they were forced to engage in needless discovery and motions to obtain dismissal of the case, incurring over $200,000 in attorneys' fees in the process. Defendants thus contend that this is precisely the type of vexatious, unreasonable, and baseless lawsuit for which the Court may award fees.

In response, Plaintiffs maintain that they initiated and litigated this case in good faith and advanced both novel legal theories and sufficient facts to justify asserting their claims against Defendants. Opp. at 1. In particular, Plaintiffs argue that their § 1983 claim for violation of their

6

right to access the courts was not frivolous, but raised an open legal question about whether a party must first bring an underlying action before asserting a denial of right to access claim. *Id*. at 4. Plaintiffs cite the Court's summary judgment order as recognizing that this exception exists, even though the Court ultimately found that "the undisputed facts presented here do not warrant the application of this rare exception." *See* Order on MSJ at 6, Dkt. No. 68.  Thus, Plaintiffs assert that their legal arguments cannot be said to be wholly lacking in merit given the novelty of the issue in this Circuit.  Opp. at 4.

With respect to their expressive conduct and expressive association claims, Plaintiffs argue that they were advancing the theory that Defendants constant harassment effected a chilling effect on their rights.  Opp. at 8.  Again, although the Court rejected Plaintiffs' arguments and found that Plaintiffs had failed to present any evidence that Defendants infringed on their rights, Plaintiffs argue that their claims were not wholly lacking foundation and they should not be penalized for pursuing them.

As to the Fourth Amendment claim, Plaintiffs contend that "[w]hen analyzing whether plaintiffs had a viable cause of action against defendants, plaintiffs reasonably relied on the expansive interpretation of a seizure as a meaningful interference, however brief, with an individual's Fourth Amendment rights."  Opp. at 10.  Plaintiffs therefore maintain that this claim was not frivolous.

Finally, with respect to Plaintiffs' Fourteenth Amendment and *Monell* claims, Plaintiffs argue that although the Court held that they failed to come forward with facts to support their theory that SFPD had an unofficial policy to persecute, harass, and intimidate Bay Riders members, Plaintiffs presented instances of harassment that Mr. Plevin faced.  *Id*. at 12-13.  They argue that simply because other instances of Defendants' misconduct "failed to materialize," it does not render their claim groundless at its inception.  *Id*. at 17.  Plaintiffs also take issue with Defendants' charge that Plaintiffs sought to misuse the discovery process to obtain information about SFPD's investigation of the Bay Riders.  Rather, Plaintiffs maintain that the discovery they sought was aimed at supporting their equal protection claim.

As the foregoing summaries make clear, both Plaintiffs and Defendants aggressively litigated

7

this case. Reviewing Plaintiffs' claims – and the legal and factual bases supporting them as they existed at the time they filed suit – the Court finds that although Plaintiffs skirted the line in this case, the Court declines to find that Plaintiffs' claims were frivolous, unreasonable, or lacked foundation. As Defendants point out, from the beginning of this matter, Plaintiffs' claims rested on a flimsy factual underpinning and stretched interpretations of legal precedent. After Judge Wilken issued her Order dismissing Plaintiffs' initial Complaint and highlighting the deficiencies in the allegations, Plaintiffs were on notice of what facts they would need to prove to raise viable claims. At the summary judgment stage, Plaintiffs' claims failed in large part for the same reason Judge Wilken initially dismissed them: Plaintiffs lacked factual support for the claims. At what juncture Plaintiffs should have become aware that their claims were untenable is not a task this Court may engage in when considering whether fees should be awarded under § 1988. *See Christiansburg Garment Co.*, 434 U.S. at 421-22. The Court, does, however recognize that Plaintiffs had *some facts* to support their theories – for instance, Plaintiffs testified that Ofc. Navarro indicated that he had the license plate information for the driver, and Ofc. Navarro at least grabbed Mr. Plevin's vest at the hospital room. Facts such as these were insufficient to carry Plaintiffs' claims, but they nonetheless gave Plaintiffs some basis to pursue this action. Further, although the Court rejected Plaintiffs' legal arguments with respect to the First and Fourth Amendment-based claims, the Court cannot say that they were frivolous. In sum, while Plaintiffs were unsuccessful in this lawsuit and came dangerously close to the line drawn by the Supreme Court for § 1988 fee awards, the Court finds that an award is not justified in this case. Accordingly, Defendants' request for fees under § 1988 is **DENIED.**

Defendants have also requested a fee award against Mr. Weiss pursuant to 28 U.S.C. § 1927. As indicated above, before the Court may sanction an attorney pursuant to § 1927, it must find that counsel acted with subjective bad faith. The Court finds that the record does not support such a finding in this matter. Accordingly, the Court **DENIES** Defendants' request.

**B.     Fees in Connection with Plaintiffs' Anti-SLAPP Motion**

1.     Overview

Defendants also seek fees incurred in connection with their anti-SLAPP Motion to Strike.

Mot. at 22. In her July 29, 2011 Order, Judge Wilken denied Defendants' anti-SLAPP motion to strike as moot in light of Plaintiffs' representation that they did not intend to reassert their state law claims in their Amended Complaint. Order at 10, Dkt. No. 31. With respect to Defendants' request for fees for work on the anti-SLAPP motion, Judge Wilken denied Defendants' motion without prejudice, indicating that Defendants may move for attorneys' fees under California Code of Civil Procedure section 425.16(c) after judgment is entered. *Id.* In their Motion, Defendants argue that because Plaintiffs dismissed their state law claims in response to the anti-SLAPP motion, they are prevailing parties and are entitled to $26,097.50 in mandatory attorneys' fees. Mot. at 22.

2. Legal Standard

Generally, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c); *see also Bernardo v. Planned Parenthood Fed. of Am.*, 115 Cal. App. 4th 322, 360-37 (2004) (explaining policy behind mandatory fees and costs provision of anti-SLAPP statute). The fee provision of the anti-SLAPP statute applies in federal court. *Metabolife Int'l., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002); *see also United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir. 1999). A defendant may be deemed a prevailing party entitled to attorneys' fees, even if a plaintiff voluntarily dismisses the claims that were subject to an anti-SLAPP motion to strike. *See Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998); *Clear Channel Outdoor, Inc. v. Lee*, 2009 WL 57110, at *1-2 (N.D. Cal. Jan. 8, 2009); *Pandora Jewelry, LLC v. Bello Paradiso*, LLC, 2009 WL 1953468, at *3-4 (E.D. Cal. July 1, 2009). In determining whether to exercise their discretion to deem a defendant a prevailing party, courts must consider the "critical issue" of "which party realized its objectives in the litigation." *Coltrain*, 66 Cal. App. 4th at 107. A plaintiff "may try to show it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits." *Id.*

An award of attorneys' fees to a prevailing party on a special motion to strike is mandatory. Cal. Civ. Proc. Code § 425.16(c); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001). Fees

9

should only be awarded for work reasonably related to the special motion to strike brought under the anti-SLAPP statute, *see, e.g., Christian Research Inst. v. Ulnar*, 165 Cal. App. 4th 1315, 1320 (2008). Fees are also recoverable for the reasonable time spent seeking an award of statutory attorneys' fees. *Ketchum*, 24 Cal.4th at 1141.

3.  Analysis

Plaintiffs argue that Defendants are not entitled to a fee award for their anti-SLAPP motion because Defendants' motion "was frivolous or at least not well taken because it was based on grounds that did not even exist in the original complaint." Opp. at 16-19. Plaintiffs explain their strategy in opposing both Defendants' anti-SLAPP and 12(b)(6) motions, particularly, Plaintiffs state that "[i]t was intended, by opposing the anti-SLAPP motion on its merits, that the court would deny it." Opp. at 17. They assert that their argument was that section 425.16 is inapplicable to this case "because there was no privilege allowing a police officer to conceal or destroy evidence." *Id*. Plaintiffs also argue that Defendants' motion was frivolous because it was based on the argument that Plaintiffs' lawsuit was premised on a false police report, when, in fact, Plaintiffs' theory was that even if Ofc. Navarro turned in his report, "there was no intent . . . that his report would serve as an essential step to the institution of criminal proceedings or any other kind of proceeding because Navarro concealed or destroyed the critical information necessary for any type of proceeding to go forward." *Id*.

As Defendants point out, whatever information Plaintiffs contend was omitted, Ofc. Navarro's incident report was part of a preliminary investigation for a potential criminal investigation, which brings it within the scope of the anti-SLAPP statute. Cal. Code. Civ. Proc. § 425.16(e)(2). Thus, this Court agrees with Judge Wilken's prior holding that the statute applies in this circumstance. Whatever Plaintiffs' strategy or belief as to the merits of the arguments Defendants raised in their anti-SLAPP motion, Plaintiffs chose to dismiss their state law claims in response. The Court therefore agrees with Defendants that they are the prevailing parties and are entitled to recover their fees associated with the motion.

The Court thus turns to the reasonableness of their fee request.

### 4. Lodestar Analysis

"Although an award of attorney fees is mandatory under the anti-SLAPP statute, the amount of such fees is discretionary." *Kearney v. Foley and Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) (citing *Metabolife*, 213 F. Supp. 2d at 1222. In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. In calculating the lodestar, the court must determine both a reasonable number of hours and a reasonable hourly rate for each attorney. *Morales*, 96 F.3d at 363. In calculating a reasonable number of hours, the applicant must justify the claim by submitting detailed time records. The court may adjust these hours down if it believes the documentation to be inadequate, if the hours were duplicative, or if the hours were either excessive or unnecessary. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

In support of their Motion, Defendants have provided a declaration from lead counsel, Warren Metlitzky (Dkt. No. 76). Mr. Metlitzky indicates that his billing rate is $365 an hour. Metlitzky Decl. ¶ 42. Mr. Metlitzky has provided a detailed description of his education and practical experience as an attorney justifying this rate. Metlitzky Decl. ¶¶ 34, 42. Plaintiffs have not raised any objection to Mr. Metlitzky's billing rate. The Court finds that it is consistent – if not less than – those of an attorney with similar experience and undertaking similar work in Northern California. The Court thus finds this rate reasonable.[1]

Mr. Metlitzky states that he billed 71.5 hours on the anti-SLAPP motion and has submitted his time sheets detailing the tasks and time billed. Metlitzky Decl. ¶ 76; Metlitzky Anti-SLAPP Decl. ¶ 7, Dkt. No. 17; Metlitzky Anti-SLAPP Reply Decl. ¶¶ 2-5, Dkt. No. 25. The Court has reviewed Mr. Metlirzky's time sheets and finds that the amount of time billed – which Mr. Metlitzky has

---

[1] Defendants do not seek to recover fees for paralegal time or time billed by another attorney who worked on the motion.

11

discounted from the total time billed for working on the anti-SLAPP motion – is reasonable. Moreover, Defendants have not raised any credible objections to the time billed for this work. Accordingly, the Court finds that Defendants are entitled to recover fees for the 71.5 hours Mr. Metlitzky billed working on the anti-SLAPP motion. The Court therefore **GRANTS** Defendants' request for fees in the amount of $26,097.50.

### IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Attorney Fees and Expert Fees as follows: the Court **GRANTS** Defendants' Motion for attorneys fees incurred in connection with its anti-SLAPP motion in the amount of $26,097.50.  The Court **DENIES** Defendants' Motion in all other respects.

**IT IS SO ORDERED.**

Dated: May 16. 2013

_____
Maria-Elena James
United States Magistrate Judge